## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT JOSEPH BUGLAK, JR.** | : | |
| **Individually and on behalf of other** | : | **CIVIL ACTION** |
| **employees similarly situated,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WELLS FARGO BANK, N.A.,** | : | **No. 16-4546** |
| **Defendant.** | : | |

## MEMORANDUM

**Schiller, J.**                                                                  **July 21, 2017**

Robert Buglak and John Silano sold residential loans for Wells Fargo Bank. According to Buglak and Silano, Wells Fargo violated the Fair Labor Standards Act ("FLSA") by failing to pay them overtime. Wells Fargo counters by claiming that Plaintiffs are exempt from the FLSA's overtime requirements under the "outside sales exemption." Wells Fargo filed a motion for partial summary judgment on April 18, 2017. Plaintiffs filed their response 17 days past the deadline and Wells Fargo subsequently filed a motion to strike Plaintiff's untimely response. Because the Court finds that Buglak and Silano fall within the outside sales exemption, the Court will grant Wells Fargo's motion for partial summary judgment, and deny its motion to strike as moot.

## I.      BACKGROUND

Buglak and Silano worked as mortgage officers to sell residential loans in Wells Fargo's Bensalem, Pennsylvania office. (Def's Mot. Partial Summ. J. Ex. A, [hereinafter "Buglak Dep."] at 19:9–12; *id.* Ex. B, [hereinafter "Silano Dep."] at 63:6–10.) Buglak and Silano did not have fixed work schedules; for example, Buglak's schedule varied from week to week, and Silano was

generally free to arrive at the office when he wished. (Buglak Dep. 84:8–23; Silano Dep. 93:3–16.)

Buglak consistently spent time outside of the office at open houses to meet with realtors and customers. (Buglak Dep. 118:3–9.) Throughout the course of his employment with Wells Fargo, he attended an average of three open houses per week, usually on Sundays, for an average of three hours total. (Buglak Dep. 118:3–9; 125:4–6.) The purpose of attending these open houses was to generate business. (Buglak Dep. 118:13–16.) Buglak would follow up one to three times per week with the realtors who he met at these open houses, and estimated that each meeting lasted between 25 minutes and three hours. (Buglak Dep. 120:2–22.) Buglak also attended an average of one closing per week, which occurred outside of the office, to ensure that problems did not arise with deals and to solicit business referrals. (Buglak Dep. 121:8–122:4; Def.'s Mot. Partial Summ. J. Ex. C, at ¶¶ 4–6.) Buglak also visited the homes of customers approximately five times per week to obtain loan documentation. (Buglak Dep. 173:3–21.)

Silano also consistently spent time outside the office. He attended an average of three to four open houses each Sunday, with the hope of earning referrals from realtors. (Silano Dep. 190:8–17; 193:21–194:6.) He spent anywhere from fifteen minutes to an hour and a half at these events. (Silano Dep. 194:20–23.) Silano also attended approximately one closing per month, which typically took place at a realtor's, attorney's, or a title company's office. (Silano Dep. 191:8–24.) He also made "cold calls," during which he would show up at a realtor's office and try to establish a business relationship. (Silano Dep. 189:4–11; 194:24–195:7.) These occurred two to three times per week, and would last between one minute and an hour. (Silano Dep. 189:22–190:1; 195:20–196:5.)

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the burden of showing that the record reveals no genuine issue as to any material fact. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 247.  Once this burden is met, the nonmoving party must go beyond the pleadings to set forth specific facts in the record showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). A court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III.    DISCUSSION

### A.     Plaintiffs' Untimely Response to Wells Fargo's Motion for Partial Summary Judgment

Plaintiffs' failure to file a timely response to Wells Fargo's motion for partial summary judgment "does not alter the traditional summary judgment standard, [but] it [does require] that the Court account for the lack of a response in its analysis." *Reynolds v. Rick's Mushroom Serv., Inc.*, 246 F. Supp. 2d 449, 453 (E.D. Pa. 2003). "By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond to or to controvert the facts asserted in the summary judgment motion." *Id.* (quoting *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002)). That said, a party's failure to file a timely

response in compliance with local rules, by itself, does not require summary judgment. *Id.*; Fed. R. Civ. P. 56(e)(3). A court must still determine whether the moving party's alleged facts warrant summary judgment. *Reynolds*, 246 F. Supp. 2d at 453.

Wells Fargo filed its summary judgment motion on April 18, 2017. Local rules require a non-moving party to respond to a summary judgment motion within fourteen days. E.D. Pa. Civ. R. 7.1(c). Plaintiffs responded on May 19, 2017, seventeen days late. Due to their non-compliance with local rules, the Court will not consider Plaintiffs' response.[1] Pursuant to Rule 56(e)(3), the court will consider all facts presented by Wells Fargo as undisputed in analyzing its motion for partial summary judgment.

### B.    Wells Fargo's Motion for Partial Summary Judgment

The FLSA requires increased compensation to employees for any time worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). However, "outside salesmen" are exempt from this requirement. 29 U.S.C. § 213(a)(1). The FLSA defines an "outside salesman" as an employee:

1)    Whose primary duty is:
    i)    making sales within the meaning of section 3(k) of the [FLSA], or
    ii)    obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
2)    Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500; *see also Levitt v. Tech. Educ. Servs., Inc.*, Civ. A. No. 10-6823, 2012 WL 3205490, at *5 (E.D. Pa. Aug. 7, 2012).

---

[1] Wells Fargo characterized their June 5, 2017 filing as a motion to strike Plaintiffs' response as untimely. Regardless of the label, the Court will disregard Plaintiffs' response for a violation of the local rules and then follow Rule 56(e)(3), which reaches essentially the same conclusion. The Court will not consider Plaintiffs' responses because of their failure to comply with local rules, and deny Wells Fargo's motion to strike as moot.

### i.      Primary Duty is Making Sales

"Primary duty" is defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). This is a fact specific inquiry, but "the major emphasis [is] on the character of the employee's job as a whole." *Id.* While the amount of time spent performing exempt work is illustrative, it is not dispositive. § 541.700(b). "Time alone . . . is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work." *Id.* "[W]ork performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work." § 541.500(b). A "sale" is defined in the FLSA as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k).

In their Complaint, Plaintiffs admit that the duty of mortgage officers was to sell residential mortgage loans to customers. (First Am. Compl. ¶ 16.) In their depositions, both Buglak and Silano admitted that their foremost responsibility as mortgage loan officers was to sell residential loans. (Buglak Dep. 45:4–9; Silano Dep. 43:10–15.) Based on this, both Buglak and Silano's primary duty was making sales.

### ii.      Customarily and Regularly Away from the Office

The outside sales exemption requires that the employee be "customarily and regularly" engaged away from the employer's office. 29 C.F.R. § 541.502. "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which . . . may be less than constant." § 541.701. "Tasks or work performed 'customarily and regularly' include work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." *Id.* Further, "[p]romotional work that is actually performed incidental to and in

conjunction with an employee's own outside sales or solicitations is exempt work." § 541.503(a). The Department of Labor has stated that an employee can satisfy the "customarily and regularly" requirement by performing sales-related activity outside the office "one or two hours a day, one or two times a week." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards Act, 3 (Jan. 25, 2007); *see also Hartman v. Prospect Mortg., LLC*, 11 F. Supp. 3d 597, 602 (E.D. Va. 2014) (explaining that sales activity occurring one or two hours a day, one or two times a week satisfies the "customarily and regularly" requirement). The determinative factor is not that sales are made outside of the office, but that on more than an occasional basis the employee performs tasks away from the office that are crucial to the sales process. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards Act, 3 (Jan. 25, 2007); *see also Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 620 (E.D. Va. 2014) (stating that sales activities must be performed away from the office on more than an occasional basis).

Both Buglak and Silano performed sales activity away from the office on more than an occasional basis. In fact, their deposition testimony demonstrates that they regularly worked away from the office. To generate business with realtors, Buglak regularly attended open houses on Sundays for an average of three hours. (Buglak Dep. 118:3–16; 125:4–6.) He would then follow up with the realtors as many as three times per week, with each meeting lasting anywhere from 25 minutes to three hours. (Buglak Dep. 120:2–22.)  He left the office to attend the closings for sales that he made once per week, and visited customer homes approximately five times per week to obtain loan documentation. (Buglak Dep. 121:8–11; 121:12–122:4; 173:3–21.) Similarly, Silano spent anywhere from fifteen minutes to an hour each at three to four open houses every Sunday. (Silano Dep. 190:8–17; 193:21–194:23.) He also conducted "cold call"

visits at realtors' offices up to three times per week, which would last up to an hour. (Silano Dep. 189:4–190:1; 194:25–195:7; 195:20–196:5.)

 These customary and regular sales activities exceed the threshold of "one or two hours a day, one or two times a week." Based on this, Buglak and Silano customarily and regularly performed sales activities away from their employer's place of business. Therefore, Buglak and Silano are exempt from the FLSA overtime requirement.


**IV.    CONCLUSION**

For the foregoing reasons, Defendant's motion for partial summary judgment is granted. An Order consistent with this Memorandum will be docketed separately.